Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| In the Matter of the Search of | |
|---|---|
| *(Briefly Describe the property to be searched or identify the person by name and address* | Case No.    21-9177 MB |
| 1988 Ford F150 bearing license plate BNZ6355 registered to Jon Christen. | |

## ELECTRONIC ISSUED SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of <u>Arizona     </u>.
*(identify the person or describe the property to be searched and give its location)*:

### As further described in Attachment A.

The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

### As set forth in Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before        <u>8/11/2021                      </u>.
*(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m.
☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*       ☐ for 30 days *(not to exceed 30)*
☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    <u>7/28/2021 @ 2:55pm</u>            *ESWillett*
*Judge's signature*

City and State:  <u>Phoenix, Arizona            </u>        <u>Honorable Eileen S. Willett, U.S. Magistrate Judge      </u>
*Printed name and title*

**ATTACHMENT A - Vehicle**

**DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS**

**TO BE SEARCHED**

**PROPERTY:**

A 1988 Ford F150, bearing Arizona license BNZ6355, VIN: 2FTDF15N2JCB47652, registered to Jon Christen Evan. at 2755 East Broadway Road, Apt 90, Mesa, Arizona, 85206, for the property and personal belongings (including computers and computer media).

**ITEMS:**

Search for all items listed within ATTACHMENT B.

**ATTACHMENT B**

**ITEMS TO BE SEARCHED AND SEIZED**

1.      Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including:

a.      Any computer, computer system  and related peripherals; cellular phones, personal digital assistants, tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, scanners, modems, tape drives, disk applications programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer-related operation equipment, firewalls, switches, hubs, wireless access points, gaming consoles, web cameras, uninterrupted power supplies, hardware device power supplies, tape backup drives, digital video recorders, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including JPG, GIF, TIP AVI, and MPEG), and any electronic data storage devices including, hardware, software, diskettes, backup tapes, CD-ROMS, DVD, flash memory devices, and other storage mediums; any input/output peripheral devices, including computer passwords and data security devices an computer-related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; distribute, receive, or possess child pornography;

b.      Books and magazines containing child pornography;

c.      Originals, copies, and negatives of visual depictions of child pornography; and

d.      Motion pictures, films, videos, and other recordings of visual depictions of child pornography.

2.      Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of child pornography, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, of the U.S. mail including:

a.      Envelopes, letters and other correspondence including electronic mail, chat logs,

1

1   and electronic messages, establishing possession, access to, or transmission through interstate or

2   foreign commerce, including by U.S. mail or by computer, of child pornography;

3         b.    Books, ledgers and records bearing on the productions, reproduction, receipt,

4   shipment, orders, requests, trades, purchases or transactions of any kind involving the

5   transmission through interstate or foreign commerce, including by U.S. mail or by computer of

6   child pornography;

7         c.    Records, documents, or materials, including any and all address books, mailing

8   lists, supplier lists, mailing address labels, and documents and records pertaining to the

9   preparation, purchase and acquisition of names or lists of names to be used in connections with

10   the purchase, sale, trade or transmission of child pornography, through interstate commerce

11   including by U.S. mail or by computer;

12         d.    Records, documents or materials, including address books, names and lists of

13   names and addresses of minors visually depicted in child pornography;

14         e.    Records of Internet usage, including user names and e-mail addresses and

15   identities assumed for the purposes of communication on the Internet to purchase, sell, trade,

16   transmit or acquire child pornography.   These records may include ISP records, i.e., billing and

17   subscriber records, chat room logs, e-mail messages and include electronic files in a computer

18   and on other data storage mediums, including CDs or DVDs.

19   3.    Credit card information which evidences ownership or use of the computer equipment

20   found in the above residence, including payment for Internet access and computers or electronic

21   media or other storage devices, disks, CD-ROMS, or similar containers for electronic evidence.

22   4.    Records evidencing occupancy or ownership of the premises described above, including

23   utility and telephone bills, mail, envelopes or addressed correspondence.

24   5.    Records or other items which evidence ownership or use of computer equipment found in

25   the above residence, including sales receipts, bills for Internet access and handwritten notes.

26   6.    Any computer hard drive or other electronic media (COMPUTER), physically located at

27   the residence or virtually connected to any computer within the residence, found to contain

28   information otherwise called for by this warrant:

1      a.      Evidence of who used, owned, or controlled the COMPUTER at the time the things

2 described in this warrant were created, edited, or deleted, such as logs, registry entries, saved

3 usernames and passwords, documents, and browsing history;

4      b.      Evidence of software that would allow others to control the COMPUTER, such as

5 viruses, Trojan horses, and other forms of malicious software;

6      c.      Evidence of the lack of such malicious software;

7      d.      Evidence of the attachment to the COMPUTER of other storage devices, disks,

8 CD-ROMS, or similar containers for electronic evidence;

9      e.      Evidence of the times the COMPUTER was used;

10      f.      Passwords, encryption keys, and other access devices that may be necessary to

11 access the COMPUTER.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

In the Matter of the Search of
*(Briefly Describe the property to be searched or identify the person by name and address)*

1988 Ford F150 bearing license plate BNZ6355 registered to Jon Christen.

Case No.   21-9177 MB

### ELECTRONICALLY SUBMITTED APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Special Agent, Emily A. Steele, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the District of Arizona.

### As further described in Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C § 2252(a)(2) | Distribution / Receipt of Child Pornography |
| 18 U.S.C § 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:
### As set forth in Attachment C, incorporated herein by reference.

☒ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA *s/Gayle L. Helart*

X  _____ Sworn by Telephone   GAYLE HELART   Digitally signed by GAYLE HELART Date: 2021.07.28 13:28:05 -07'00'

Date and time issued: ___7/28/2021 @2:55pm___

City and State: Phoenix, Arizona

*Applicant's Signature*

Emily A. Steele, Special Agent, FBI
*Applicant's printed name and title*

*Judge's signature*

Honorable Eileen S. Willett, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A - Vehicle**

**DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS**

**TO BE SEARCHED**

**PROPERTY:**

A 1988 Ford F150, bearing Arizona license BNZ6355, VIN: 2FTDF15N2JCB47652, registered to Jon Christen Evan. at 2755 East Broadway Road, Apt 90, Mesa, Arizona, 85206, for the property and personal belongings (including computers and computer media).

**ITEMS:**

Search for all items listed within ATTACHMENT B.

# ATTACHMENT B

## ITEMS TO BE SEARCHED AND SEIZED

1.   Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including:

     a.   Any computer, computer system  and related peripherals; cellular phones, personal digital assistants, tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, scanners, modems, tape drives, disk applications programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer-related operation equipment, firewalls, switches, hubs, wireless access points, gaming consoles, web cameras, uninterrupted power supplies, hardware device power supplies, tape backup drives, digital video recorders, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including JPG, GIF, TIP AVI, and MPEG), and any electronic data storage devices including, hardware, software, diskettes, backup tapes, CD-ROMS, DVD, flash memory devices, and other storage mediums; any input/output peripheral devices, including computer passwords and data security devices an computer-related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; distribute, receive, or possess child pornography;

     b.   Books and magazines containing child pornography;

     c.   Originals, copies, and negatives of visual depictions of child pornography; and

     d.   Motion pictures, films, videos, and other recordings of visual depictions of child pornography.

2.   Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of child pornography, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, of the U.S. mail including:

     a.   Envelopes, letters and other correspondence including electronic mail, chat logs,

1   and electronic messages, establishing possession, access to, or transmission through interstate or

2   foreign commerce, including by U.S. mail or by computer, of child pornography;

3      b.   Books, ledgers and records bearing on the productions, reproduction, receipt,

4   shipment, orders, requests, trades, purchases or transactions of any kind involving the

5   transmission through interstate or foreign commerce, including by U.S. mail or by computer of

6   child pornography;

7      c.   Records, documents, or materials, including any and all address books, mailing

8   lists, supplier lists, mailing address labels, and documents and records pertaining to the

9   preparation, purchase and acquisition of names or lists of names to be used in connections with

10  the purchase, sale, trade or transmission of child pornography, through interstate commerce

11  including by U.S. mail or by computer;

12     d.   Records, documents or materials, including address books, names and lists of

13  names and addresses of minors visually depicted in child pornography;

14     e.   Records of Internet usage, including user names and e-mail addresses and

15  identities assumed for the purposes of communication on the Internet to purchase, sell, trade,

16  transmit or acquire child pornography.   These records may include ISP records, i.e., billing and

17  subscriber records, chat room logs, e-mail messages and include electronic files in a computer

18  and on other data storage mediums, including CDs or DVDs.

19  3.   Credit card information which evidences ownership or use of the computer equipment

20  found in the above residence, including payment for Internet access and computers or electronic

21  media or other storage devices, disks, CD-ROMS, or similar containers for electronic evidence.

22  4.   Records evidencing occupancy or ownership of the premises described above, including

23  utility and telephone bills, mail, envelopes or addressed correspondence.

24  5.   Records or other items which evidence ownership or use of computer equipment found in

25  the above residence, including sales receipts, bills for Internet access and handwritten notes.

26  6.   Any computer hard drive or other electronic media (COMPUTER), physically located at

27  the residence or virtually connected to any computer within the residence, found to contain

28  information otherwise called for by this warrant:

2

    a.      Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

    b.      Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software;

    c.      Evidence of the lack of such malicious software;

    d.      Evidence of the attachment to the COMPUTER of other storage devices, disks, CD-ROMS, or similar containers for electronic evidence;

    e.      Evidence of the times the COMPUTER was used;

    f.      Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER.

3

**ELECTRONICALLY SUBMITTED AFFIDAVIT IN**

**SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Emily A. Steele, Special Agent with Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows, to wit:

**INTRODUCTION**

The facts of this case, as more fully detailed herein, are that in June 2021, a Kik user with a username of "hi696987" and display name of "Big Pappa" was a member of a two Kik private groups. An undercover FBI Agent from the Phoenix Field Office in Phoenix, Arizona was part of these private groups and began a private message chat with "Big Pappa." "Big Pappa" sent a video depicting child pornography within one of the private Kik groups on June 2, 2021. "Big Pappa" sent a second video depicting child pornography within another private Kik group on June 24, 2021. "Big Pappa" then sent the undercover agent a video depicting child pornography within their private messages on June 25, 2021. Investigative steps determined that the Kik user "Big Pappa" was established on July 27, 2020, with an email account "boxriggs69@gmail.com." Subpoena results from Google Inc. revealed that email account "boxriggs69@gmail.com" was registered in the name of Jon Christen, with a phone number of 602-762-4511 and with an IP address of "68.3.188.177." The IP address, 68.3.188.177, comes back to a location of Mesa, Arizona. This information was used in record checks and resulted in an address of 3755 East Broadway Road, Apartment 90, Mesa, Arizona 85206 which is rented by Jon Evan Christen (hereafter referred to as CHRISTEN). CHRISTEN has three vehicles associated with him. Record checks revealed that CHRISTEN has two vehicles registered in his name.   Two can be described as a 2016 BMW I3 bearing Arizona license plate CAX5107 and a 1988 Ford F150 bearing Arizona license plate BNZ6355. Additionally, CHRISTEN has a take home-work truck, a 2019 F250 bearing Arizona license plate G956JH, which is registered as a government vehicle with the company "Salt River Project" (hereafter referred to as SRP). I am requesting that the Court issue five warrants to search the residence of 3755 East Broadway Road, Apartment 90, Mesa, Arizona, 85206, the person of CHRISTEN for digital devices, and the three vehicles associated with Christen—specifically, the vehicle 2016 BMW I3 bearing Arizona license plate

CAX5107, the vehicle 1988 Ford F150 bearing Arizona license plate BNZ6355, and the vehicle 2019 F250 bearing Arizona license plate G956JH, for digital devices to locate child pornography and conclusively identify the individual transmitting child pornography.

## PRELIMINARY BACKGROUND INFORMATION

1.   I am a Special Agent with the FBI assigned to the Phoenix Division. I have been so employed for two years. I have consulted this case with Special Agent Candace Rose who has been employed for seventeen years as a Special Agent and is specifically assigned to conduct investigations pursuant to the FBI's Innocent Images National Initiative (IINI), which focuses on crimes where computers and the Internet are used in the sexual exploitation of children. I am responsible for conducting federal and international investigations relating to crimes involving the sexual exploitation of children. I have received basic and on-the-job training in the investigation of cases involving the sexual exploitation of children.   The statements contained in this Affidavit are based on my experience and background as a Special Agent and on information provided by other law enforcement agents.

2.   The purpose of this application is to seize evidence, more particularly described in Attachment B, of violations of 18 U.S.C. §§ 2252(a)(2) which makes it a crime to receive and distribute child pornography and violations of 18 U.S.C. §§ 2252(a)(4)(B), which makes it a crime to possess, or knowingly access with intent to view, child pornography.

3.   Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.   I have set forth only those facts that are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2252 is located at search 3755 East Broadway Road, Apartment 90, Mesa, Arizona, 85026 ("SUBJECT PREMISES"), more particularly described in Attachment A of the residential search warrant, within a computer and related peripherals and computer media found at the SUBJECT PREMISES; is located on CHRISTEN, and any property and personal belongings (including computers and computer media), more particularly described in Attachment A of the person warrant; and is located in the three vehicles associated with CHRISTEN, a 2016 BMW I3 bearing Arizona license plate CAX5107, a 1988 Ford F150

2

1    bearing Arizona license plate BNZ6355, and a 2019 F250 (SRP truck) bearing Arizona license

2    plate G956JH, and any property and personal belongings (including computers and computer

3    media), more particularly described in Attachment A of the vehicle warrant.

## DEFINITIONS

5    4.    The following non-exhaustive list of definitions applies to this Affidavit and Attachments

6    A and B (collectively referred to as "warrant"):

7    a.    "Child Pornography" is any visual depiction of sexually explicit conduct where (a)

8    the production of the visual depiction involved the use of a minor engaged in sexually explicit

9    conduct, (b) the visual depiction is a digital image, computer image, or computer-generated

10   image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct,

11   or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable

12   minor is engaged in sexually explicit conduct. See 18 U.S.C. § 2256(8).

13   b.    "Child Erotica" means materials or items that are sexually arousing to persons having a

14   sexual interest in minors, but that are not, in and of themselves, obscene or illegal.   In contrast

15   to "child pornography," this material does not necessarily depict minors in sexually explicit

16   poses or positions.   Some of the more common types of child erotica include photographs that

17   are not sexually explicit, drawings, sketches, fantasy writing, and diaries.   See Kenneth V.

18   Lanning, Child Molesters: A Behavioral Analysis (2001) at 65.   Federal courts have recognized

19   the evidentiary value of child erotica and its admissibility in child pornography cases.   See

20   United States v. Cross, 928 F.2d 1030 (11th Cir. 1991) (testimony about persons deriving sexual

21   satisfaction from and collecting non-sexual photographs of children admissible to show intent

22   and explain actions of defendant); United States v. Riccardi, 258 F.Supp.2d 1212 (D. Kan., 2003)

23   (child erotica admissible under Federal Rule of Evidence 404(b) to show knowledge or intent).

24   c.    "Visual depictions" include undeveloped film and videotape, and data stored on

25   computer disk or by electronic means, which is capable of conversion into a visual image.   See

26   18 U.S.C. § 2256(5).

27   d.    "Minor" means any person under the age of eighteen years.   See 18 U.S.C. § 2256(1).

28   e.    "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including

1   genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex;

2   (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of

3   the genitals or pubic area of any person.   See 18 U.S.C. § 2256(2).

4       f.   "Computer" means "an electronic, magnetic, optical, electrochemical, or other high

5   speed data processing device performing logical or storage functions, and includes any data

6   storage facility or communications facility directly related to or operating in conjunction with

7   such device."   See 18 U.S.C. § 1030(e)(1).

8       g.   "Computer hardware" consists of all equipment which can receive, capture, collect,

9   analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar

10  computer impulses or data.   Computer hardware includes any data-processing devices

11  (including   central processing units, internal and peripheral storage devices such as fixed disks,

12  external hard drives, floppy disk drives and diskettes, and other memory storage devices),

13  peripheral input/output devices (including keyboards, printers, video display monitors, and

14  related communications devices such as cables and connections), as well as any devices,

15  mechanisms, or parts that can be used to restrict access to computer hardware (including physical

16  keys and locks).

17      h.   "Computer software" is digital information which can be interpreted by a computer and

18  any of its related components to direct the way they work.   Computer software is stored in

19  electronic, magnetic or other digital form.   It commonly includes programs to run operating

20  systems, applications and utilities.

21      i.   "Computer-related   documentation"   consists   of   written,   recorded,   printed,   or

22  electronically stored material which explains or illustrates how to configure or use computer

23  hardware, computer software or other related items.

24      j.   "Computer passwords and data security devices" consist of information or items

25  designed to restrict access to or hide computer software, documentation or data.   Data security

26  devices may consist of hardware, software or other programming code.   A password (a string

27  of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data

28  security devices.   Data security hardware may include encryption devices, chips and circuit

4

1   boards.   Data security software of digital code may include programming code that creates

2   "test" keys or "hot" keys, which perform certain pre-set security functions when touched.   Data

3   security software or code may also encrypt, compress, hide or "booby-trap" protected data to

4   make it inaccessible or unusable, as well as reverse the progress to restore it.

5       k.  "Internet Service Providers" (ISPs) are commercial organizations, which provide

6   individuals and businesses access to the Internet.   ISPs provide a range of functions for their

7   customers including access to the Internet, web hosting, e-mail, remote storage and co-location

8   of computers and other communications equipment.   ISPs can offer various means to access the

9   Internet, including telephone based dial-up, broadband based access via a digital subscriber line

10  (DSL) or cable television, dedicated circuits, or satellite based subscription.   ISPs typically

11  charge a fee based upon the type of connection and volume of data, called bandwidth that the

12  connection supports.   Many ISPs assign each subscriber an account name such as a user name

13  or screen name, an e-mail address, and an e-mail mailbox and the subscriber typically creates a

14  password for the account.   By using a computer equipped with a telephone or cable modem, the

15  subscriber can establish communication with an ISP over a telephone line or through a cable

16  system, and can access the Internet by using his or her account name and password.

17      l.  "ISP Records" are records maintained by ISPs pertaining to their subscribers (regardless

18  of whether those subscribers are individuals or entities).   These records may include account

19  application information, subscriber and billing information, account access information (often

20  times in the form of log files), e-mail communications, information concerning content uploaded

21  and/or stored on or via the ISP's servers and other information, which may be stored both in

22  computer data format and in written or printed record format.   ISPs reserve and/or maintain

23  computer disk storage space on their computer system for their subscribers' use.   This service

24  by ISPs allows for both temporary and long-term storage of electronic communications and

25  many other types of electronic data and files.

26      m. "Internet Protocol address" (IP address) refers to a unique number used by a computer

27  to access the Internet.   IP addresses can be dynamic, meaning that the Internet Service Provider

28  (ISP) assigns a different unique number to a computer every time it accesses the Internet.   IP

1    addresses might also be static, if an ISP assigns a user's computer a particular IP address which

2    is used each time the computer accesses the Internet.

3        n.  The terms "records," "documents" and "materials" include all information recorded in

4    any form, visual or aural, and by any means, whether in hand-made form (including writings,

5    drawings, painting), photographic form (including microfilm, microfiche, prints, slides,

6    negatives, videotapes, motion pictures, photocopies), mechanical form (including phonograph

7    records, printing, typing) or electrical, electronic or magnetic form (including tape recordings,

8    cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard

9    disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media

10   Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators,

11   electronic dialers or electronic notebooks, as well as digital data files and printouts or readouts

12   from any magnetic, electrical or electronic storage device).

13       o.  "Digital device" includes any electronic system or device capable of storing and/or

14   processing data in digital form, including the following: central processing units; laptop or

15   notebook computers; PDAs; wireless communication devices such as telephone paging devices,

16   beepers and mobile telephones; peripheral input/output devices such as keyboards, printers,

17   scanners, plotters, monitors and drives intended for removable media; related communications

18   devices such as modems, cables and connections; storage media such as hard disk drives, floppy

19   disks, compact disks, magnetic tapes and memory chips; and security devices.

20       p.  "Image" or "copy" refers to an accurate reproduction of information contained on an

21   original physical item, independent of the electronic storage device.  "Imaging" or "copying"

22   maintains contents, but attributes may change during the reproduction.

23       q.  "Hash value" refers to a mathematical algorithm generated against data to produce a

24   numeric value that is representative of that data.   A hash value may be run on media to find the

25   precise data from which the value was generated.   Hash values cannot be used to find other data.

26       r.  "Steganography" refers to the art and science of communicating in a way that hides the

27   existence of the communication. It is used to hide a file inside another. For example, a child

28   pornography image can be hidden inside another graphic image file, audio file or other file

6

format.

s. "Compressed file" refers to a file that has been reduced in size through a compression algorithm to save disk space. The act of compressing a file will make it unreadable to most programs until the file is uncompressed.

t. "Domain Name" refers to the common, easy to remember names associated with an Internet Protocol address.   For example, a domain name of www.usdoj.gov refers to the Internet Protocol address of 149.101.1.32.   Domain names are typically strings of alphanumeric characters with each level delimited by a period.   Each level, read backwards - from right to left- further identifies parts of an organization.   Examples of first level or top-level domains are typically .com for commercial organizations, .gov for the governmental organizations, .org for organizations, and .edu for educational organizations.   Second level names will further identify the organization.   For example, usdoj.gov further identifies the United States governmental agency to be the Department of Justice.   Additional levels may exist as needed until each machine is uniquely identifiable.   For example, www.usdoj.gov identifies the world wide web server located at the United States Department of Justice, which is part of the United States government.

u. "Log Files" are records automatically produced by computer programs to document electronic events that occur on computers.   Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors.   Logs are often named based on the types of information they contain.   For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

v. "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

w. "Website" consists of textual pages of information and associated graphic images.   The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport

1  Protocol (HTTP).

2      x.  "Uniform Resource Locator" or "Universal Resource Locator" or "URL" is the unique

3  address for a file that is accessible on the Internet.  For example, a common way to get to a

4  website is to enter the URL of the website's home page file in the Web browser's address line.

5  Additionally, any file within that website can be specified with a URL.   The URL contains the

6  name of the protocol to be used to access the file resource, a domain name that identifies a

7  specific computer on the Internet, and a pathname, a hierarchical description that specifies the

8  location of a file in that computer.

9              **BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY**

10                      **AND ONLINE CHILD EXPLOITATION**

11  5.   Based upon my knowledge, training and experience in online child exploitation and child

12  pornography investigations, as well as the experience and training of other law enforcement

13  officers with whom I have had discussions, I have learned the following:

14      a.  Computers and computer technology have revolutionized the way in which child

15  pornography is produced, distributed, stored and communicated as a commodity and a further

16  tool of online child exploitation.

17      b.  Individuals can transfer photographs from a camera onto a computer-readable format

18  with a variety of devices, including scanners, memory card readers, or directly from digital

19  cameras.

20      c.  Modems allow computers to connect to another computer through the use of telephone,

21  cable, or wireless connection.   Electronic contact can be made to literally millions of computers

22  around the world.

23      d.  The capability of a computer to store images in digital form makes the computer itself

24  an ideal repository for child pornography.   As explained further below, the storage capacity of

25  electronic media used in home computers has increased tremendously within the last several

26  years.   These drives can store extreme amounts of visual images at very high resolution.

27      e.  The Internet, the World Wide Web and other Internet components afford individuals

28  many different and relatively secure and anonymous venues for obtaining, viewing and trading

1 child pornography or for communicating with others to do so or to entice children.

2     f.  Individuals can use online resources to retrieve, store and share child pornography,
3 including services offered by Internet Portals such as Google, America Online (AOL), Yahoo!
4 and Hotmail, among others.   Online services allow a user to set up an account providing e-mail
5 and instant messaging services, as well as electronic storage of computer files in any variety of
6 formats.   A user can set up an online storage account from any computer with access to the
7 Internet.   Evidence of such online storage of child pornography is often found on the user's
8 computer.   And even in cases where online storage is used, evidence of child pornography can
9 be found on the user's computer in most cases.

10     g.  As is the case with most digital technology, computer communications can be saved or
11 stored on hardware and computer storage media used for these purposes.   Storing this
12 information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the
13 location of one's favorite websites in, for example, "bookmarked" files.   However, digital
14 information can also be retained unintentionally, e.g., traces of the path of an electronic
15 communication may be automatically stored in many places (e.g., temporary files or ISP client
16 software, among others).   In addition to electronic communications, a computer user's Internet
17 activities generally leave traces or "footprints" in the web cache and history files of the browser
18 used.   Such information is often maintained for very long periods of time until overwritten by
19 other data.

20     h.  The interaction between software applications and the computer operating systems often
21 results in material obtained from the Internet being stored multiple times, and even in different
22 locations, on a computer hard drive without the user's knowledge.   Even if the computer user is
23 sophisticated and understands this automatic storage of information on his/her computer's hard
24 drive, attempts at deleting the material often fail because the material may be automatically
25 stored multiple times and in multiple locations within the computer media.   As a result, digital
26 data that may have evidentiary value to this investigation could exist in the user's computer
27 media despite, and long after, attempts at deleting it.   A thorough search of this media could
28 uncover evidence of receipt, distribution and possession of child pornography.

i.  Data that exists on a computer is particularly resilient to deletion.  Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet.  Electronic files downloaded to a hard drive can be stored for years at little to no cost.  Even when such files have been deleted, they can be recovered months or years later using readily-available forensic tools.  When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear, rather, the data remains on the hard drive until it is overwritten by new data.  Therefore, deleted files or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache.  The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.  Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed and more on a particular user's operating system, storage capacity, and computer habits.

## BACKGROUND ON CELLULAR PHONE AND CHILD PORNOGRAPHY
## AND ONLINE CHILD EXPLOITATION

6.    Based upon my knowledge, training and experience in online child exploitation and child pornography investigations, as well as the experience and training of other law enforcement officers with whom I have had discussions, I have learned the following:

a.  Cellular telephones have revolutionized the way in which child pornography is produced, distributed, stored and communicated as a commodity and a further tool of online child exploitation.

b.  A cellular telephone is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional

10

"land line" telephones.  A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

c.  The capability of a cellular telephone to store images in digital form makes the cellular telephone itself an ideal repository for child pornography.  As explained further below, the storage capacity of electronic media used in home cellular telephones has increased tremendously within the last several years.   These drives can store extreme amounts of visual images at very high resolution.

d.  The Internet, the World Wide Web and other Internet components afford individuals many different and relatively secure and anonymous venues for obtaining, viewing and trading child pornography or for communicating with others to do so or to entice children.

e.  Individuals can use online resources to retrieve, store and share child pornography, including services offered by Internet Portals such as Google, America Online (AOL), Yahoo! and Hotmail, among others.   Online services allow a user to set up an account providing e-mail and instant messaging services, as well as electronic storage of cellular telephone files in any variety of formats.   A user can set up an online storage account from any cellular telephone with access to the Internet.   Evidence of such online storage of child pornography is often found on the user's cellular telephone.   And even in cases where online storage is used, evidence of child pornography can be found on the user's cellular telephone in most cases.

f.  The interaction between software applications and the cellular telephone operating systems often results in material obtained from the Internet being stored multiple times, and even in different locations, on a cellular telephone hard drive without the user's knowledge.   Even if

1   the cellular telephone user is sophisticated and understands this automatic storage of information

2   on his/her cellular telephone's storage, attempts at deleting the material often fail because the

3   material may be automatically stored multiple times and in multiple locations within the cellular

4   telephone media.   As a result, digital data that may have evidentiary value to this investigation

5   could exist in the user's cellular telephone media despite, and long after, attempts at deleting it.

6   A thorough search of this media could uncover evidence of receipt, distribution and possession

7   of child pornography.

8   **BACKGROUND ON KIK MESSENGER**

9   7.   Kik Messenger ("Kik") is an instant messaging application for mobile devices. The

10   application is available on most iOS, Android, and Windows phone operating systems free of

11   charge.   Kik uses a smartphone's data plan or Wi-Fi to transmit and receive messages.   Kik

12   allows users to share photographs, sketches, mobile web-pages, linked internet files and other

13   content.

14   8.   Kik subscribers obtain an account by registering with Kik.   During the registration process,

15   Kik asks subscribers to provide basic personal information and to select a username.   During

16   this process, Kik registers date, time, internet protocol (IP) address and device related

17   information.   The username is the only unique identifier used by Kik.   According to the Kik

18   Law Enforcement Guide, a Kik username is unique, can never be replicated and can never be

19   changed.

20   **BACKGROUND ON COMPUTERS AND EVIDENCE ASSESSMENT PROCESS IN**

21   **CHILD PORNOGRAPHY AND CHILD EXPLOITATION**

22   **INVESTIGATIONS**

23   9.   Based upon my knowledge, training, and experience, as well as information related to me

24   by agents and others involved in the forensic examination of digital devices, I know that

25   segregating information before commencement of the review of digital evidence by the

26   examining agent is inconsistent with the evidence assessment process in child pornography and

27   online child exploitation investigations.   This is true in part because the items to be searched

28   will not only contain child pornography but also will contain the identity of the user/possessor

12

1   of the child pornography as well as evidence as to the programs and software used to obtain the

2   child pornography, which may be located throughout the areas to be searched.

3        a.      As further described in Attachment A, this warrant seeks permission to locate not

4   only computer files that might serve as direct evidence of the crimes described in the warrant,

5   but also for evidence that establishes how computers were used, the purpose of their use, and

6   who used them.   Additionally, the warrant seeks information about the possible location of other

7   evidence.

8        b.      As described above and in Attachment A, this application seeks permission to search

9   and seize certain records that might be found in the SUBJECT PREMISES, in whatever form

10  they are found.   One form in which the records might be found is stored on a computer's hard

11  drive, or other electronic media.   Some of these electronic records might take the form of files,

12  documents, and other data that is user-generated.   Some of these electronic records, as explained

13  below, might take a form that becomes meaningful only upon forensic analysis.

14       c.      Although some of the records called for by this affidavit might be found in the form

15  of user-generated documents (such as word processor, picture and movie files), computer hard

16  drives can contain other forms of electronic evidence that are not user-generated.   In particular,

17  a computer hard drive may contain records of how a computer has been used, the purposes for

18  which it was used and who has used these records, as described further in the attachments.   For

19  instance, based upon my knowledge, training and experience, as well as information related to

20  me by agents and others involved in the forensic examination of digital devices, I know the

21  following:

22              i.   Data on the hard drive not currently associated with any file can provide

23                  evidence of a file that was once on the hard drive but has since been deleted

24                  or edited, or of a deleted portion of a file (such as a paragraph that has been

25                  deleted from a word processing file).

26              ii.   Virtual memory paging systems can leave traces of information on the

27                  hard drive that show what tasks and processes the computer were recently in

28                  use.

      iii.     Web browsers, e-mail programs and chat programs store configuration information on the hard drive that can reveal information such as online nicknames and passwords.

      iv.     Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices and the times the computer was in use.

      v.   Computer file systems can record information about the dates files were created and the sequence in which they were created.   This information may be evidence of a crime or indicate the existence and location of evidence in  other locations on the hard drive.

d.  Further, in finding evidence of how a computer has been used, the purposes for which it was used and who has used it, sometimes it is necessary to establish that a particular thing is not present on a hard drive or that a particular person (in the case of a multi-user computer) was not a user of the computer during the time(s) of the criminal activity.   For instance, based upon my knowledge, training and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that when a computer has more than one user, files can contain information indicating the dates and times that files were created as well as the sequence in which they were created, and, for example, by reviewing the Index.dat files (a system file that keeps track of historical activity conducted in the Internet Explorer application), whether a user accessed other information close in time to the file creation dates, times and sequences so as to establish user identity and exclude others from computer usage during times related to the criminal activity.

e.  Evidence of how a digital device has been used, what it has been used for and who has used it, may be the absence of particular data on a digital device and requires analysis of the digital device as a whole to demonstrate the absence of particular data.   Evidence of the absence of particular data on a digital device is not segregable from the digital device.

f.  The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence or a space where evidence was once

1  located, contextual evidence identifying a computer user and contextual evidence excluding a

2  computer user.   All of these types of evidence may indicate ownership, knowledge and intent.

3      g.  This type of evidence is not "data" that can be segregated, that is, this type of data cannot

4  be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to

5  investigators.   Rather, evidence of this type is a conclusion, based on a review of all available

6  facts and the application of knowledge about how a computer behaves and how computers are

7  used.   Therefore, contextual information is necessary to understand the evidence described in

8  Attachment A also falls within the scope of the warrant.

9                  **SEARCH METHODOLOGY TO BE EMPLOYED**

10  10.  As noted within this search warrant, it would be extremely difficult, if not impossible to

11  conduct a thorough on-site review of all of the potential evidence in this case.   Given these

12  constraints, the search methodology to be employed is as follows:

13      a.  All computers, computer hardware and any form of electronic storage that could contain

14  evidence described in this warrant will be seized for an off-site search for evidence that is

15  described in the attachments of this warrant. It is anticipated that mirror copies or images of such

16  evidence will be made if the failure to do so could otherwise potentially alter the original

17  evidence.

18      b.  Consistent with the information provided within this affidavit, contextual information

19  necessary to understand the evidence, to identify the user/possessor of the child pornography,

20  and to establish admissibility of the evidence in subsequent legal proceedings will also be sought

21  by investigative agents.

22      c.  Additional techniques to be employed in analyzing the seized items will include (1)

23  surveying various file directories and the individual files they contain; (2) opening files to

24  determine their contents; (3) scanning storage areas, (4) performing key word searches through

25  all electronic storage areas to determine whether occurrences of language contained in such

26  storage areas exist that are likely to appear in the evidence described in this affidavit and its

27  attachments, and (5) performing any other data analysis techniques that may be necessary to

28  locate and retrieve the evidence described in this affidavit and its attachments.

11. Because it is expected that the computers, computer hardware and any form of electronic storage media may constitute (1) instrumentality of the offense, (2) fruit of criminal activity, (3) contraband, or (4) evidence otherwise unlawfully possessed, it is anticipated that such evidence will not be returned to the owner and that it will be either forfeited or ultimately destroyed in accordance with the law at the conclusion of the case.

a. Because of the large storage capacity as well as the possibility of hidden data within the computers, computer hardware and any form of electronic storage media, it is anticipated that there will be no way to ensure that contraband-free evidence could be returned to the user/possessor of the computer, computer hardware or any form of electronic storage media, without first wiping such evidence clean. Wiping the original evidence clean would mean that the original evidence would be destroyed and thus, would be detrimental to the investigation and prosecution of this case.

b. Further, because investigators cannot anticipate all potential defenses to the offenses in this affidavit, and as such, cannot anticipate the significance of the evidence that has been lawfully seized pursuant to this warrant, it is requested that all seized evidence be retained by law enforcement until the conclusion of legal proceedings or until other order of the court.

c. If after careful inspection investigators determine that such computers, computer hardware and electronic storage media do not contain (1) instrumentality of the offense, (2) fruit of criminal activity, (3) contraband, (4) evidence otherwise unlawfully possessed, or (5) evidence of the person who committed the offense and under what circumstances the offense was committed, then such items seized will be returned.

## CHARACTERISTICS OF INDIVIDUALS INVOLVED IN THE DISTRIBUTION OF CHILD PORNOGRAPHY

12.    Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals involved in the possession and distribution of child pornography.   Those who possess and distribute child pornography:

16

a. May receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b. May collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.   Such individuals oftentimes use these materials for their own sexual arousal and gratification.   Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. May possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location.   These individuals typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d. May maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area.   These collections are often maintained for several years and are kept close by, usually at the individual's residence, to enable the collector to view the collection, which is valued highly.

e. May correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. May prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

17

**DETAILS OF THE INVESTIGATION**

13.   Beginning in June 2021, an undercover agent out of the FBI Phoenix, Arizona Field Office, had access to two Kik messenger private chat groups that are known to law enforcement (hereafter designated "Group A" and "Group B" in this affidavit), and that appeared to have an interest in children and/or child pornography. Participants in Group A and in Group B chatrooms shared images and videos that contained child pornography within Groups A & B. Groups A & B were invite only meaning they was not open to the general public.

14.   An individual utilizing the Kik username "hi696987" with a display name of "Big Pappa" was a member of both Groups A & B.

15. On June 2, 2021, at approximately 10:30 A.M. (MST), "hi696987" posted a video file to Group A. The undercover FBI Agent captured the posting and the video file. I reviewed the video file and observed it depicted child pornography. The video file I reviewed can be described as the following:

   a.   IMG_0184.mp4: This 33 second color video file with sound, depicts a prepubescent minor female engaged in sex act. The minor female is naked and lying on her back. The minor female's legs are spread open by an adult male's hands, exposing her genitalia. The adult male performs oral sex on the minor female. The minor depicted appears to be less than 8 years old due to lack of pubic hair and genitalia development.

16. On June 24, 2021, at approximately 4:27 P.M. (MST), "hi696987" posted a video file to Group B. The undercover FBI Agent captured the posting and the video file. I reviewed the video file and observed it depicted child pornography. The video file I reviewed can be described as the following:

   1.   IMG_0514.mp4: This 1 minute and 23 second color video file with sound, depicts a prepubescent minor female engaged in a sex act. The minor female is naked and lying on her back. An adult male begins to perform oral sex on the minor female and then has the minor female begin to urinate on him as he continues oral sex.

17. On June 25, 2021, at approximately 4:40 P.M. (MST), "hi696987" sent a video file directly to the undercover FBI Agent, in a private chat between the two outside of Groups A and B.   I

18

reviewed the video file and observed it depicted child pornography. The video file I reviewed can be described as the following:

    1. IMG_0549.MP4: This 1 minute and 4 second color video file with sound, depicts a prepubescent minor female engaged in a sex act. The minor female is not wearing pants and has her genitalia exposed. The minor female is being vaginally penetrated by an adult male using his penis.

18. On July 9, 2021, at approximately 8:07 A.M. (MST), "hi696987" posted a video file to Group B. The undercover FBI Agent captured the posting and the video file. I reviewed the video file and observed it depicted child pornography. The file I reviewed can be described as the following:

    1. IMG_0612.MP4: This 1 minute and 14 second color video file with sound, depicts a minor female engaged in a sex act. The minor female is nude and appears to be the only one in the video. The minor female exposes her genitals and anus to the camera, rubs her genitals and appears to digitally penetrate herself for the camera.

19. On July 19, 2021 at approximately 2:22 P.M. (MST), "hi696987" posted a video file to Group B. The undercover FBI Agent captured the posting and the video file. I reviewed the video file and observed it depicted child pornography. The file I reviewed can be described as the following:

    1. IMG_0577.MP4: This 18 second color video file with sound, depicts a minor female engaged in a sex act. The minor female is laying on her stomach with no pants on. An adult male has his penis in between her legs and he rubs his genitals along the inside of the minor female's legs.

20. On July 21, 2021 at approximately 9:08 A.M. (MST) and 11:25 A.M. (MST), "hi696987" sent video files directly to the undercover FBI Agent in a private chat between the two outside of Groups A and B. I reviewed the video files and observed they depicted child pornography. The video files I reviewed can be described as the following:

    1. IMG_0549.MP4: This 1 minute and 4 second color video file with sound, depicts a prepubescent minor female engaged in a sex act. The minor female is not wearing pants and has

1  her genitalia exposed. The minor female is being vaginally penetrated by an adult male using his
2  penis.

3      2. IMG_0582.JPG: This color picture depicts an adult female holding a prepubescent minor
4  female exposing the minor's genitals. The adult female is in a shower, holding the prepubescent
5  minor female almost upside down, spreading apart the minor's genitals and exposing them to
6  the camera.

7  21.  An administrative subpoena was served on Kik regarding the "hi696987" account.

8  22.  Kik responded that the account was created on July 27, 2020 with an email address of
9  "boxriggs69@gmail.com." Kik also provided that the account was registered using an iPhone.

10 23.  An administrative subpoena was served on Google regarding email address
11 boxriggs69@gmail.com. Google responded that the email address "boxriggs69@gmail.com"
12 was created by a Jon Christen, phone number of 602-762-4511, created on June 6, 2017 with the
13 last IP address used to login being "68.3.188.177" on July 5, 2021.

14 24. A records check of the IP address 68.3.188.177 resulted in a location of Mesa, Arizona.

15 25. Open source investigative techniques resulted in locating Jon Evan Christen, DOB XX-XX-
16 1969 (full birthdate known to me), Social Security Number ***-**-5868 (full social security
17 number known to me), to a residential address of 3755 East Broadway Road, Apartment 90,
18 Mesa, Arizona, 85206.

19 26. Record checks for the phone number "602-762-4511" came back to Jon Evan Christen
20 located at 3755 East Broadway Road, Apt 90, Mesa, Arizona 85206.

21 27. A check of the Arizona Motor Vehicle Division revealed a driver's license for Jon Evan
22 Christen, license number B13706680, with an address of 3755 East Broadway Road, Apartment
23 90, Mesa, Arizona, 85206. The MVD check also revealed the following vehicles; a 2016 BMW
24 I3, bearing Arizona license plate CAX5107, and a 1998 Ford F150, bearing Arizona license plate
25 BNZ6355, both registered to Jon Evan Christen at address 3755 East Broadway Rd, Apt 90,
26 Mesa, Arizona 85206.

27 27. Surveillance was conducted on July 15, 2021, at 3755 East Broadway Rd, Apt 90, Mesa,
28 Arizona 85206. CHRISTEN's work truck, a 2019 F250 bearing Arizona license plate G956JH,

1  with Salt River Project logo on the side was parked out front of the residence. CHRISTEN was

2  observed leaving the residence and getting into the work truck.

3  28. A query of the Arizona Department of Economic Security revealed that CHRISTEN was

4  receiving wages from SRP, PO Box 52025, Phoenix, Arizona 85072.

5  29. A check of the Arizona Motor Vehicle Division for the license plate, G956JH, revealed that

6  the truck was owned by SRP.

7  30. Private chats between the undercover FBI Agent and "Big Pappa" included conversations

8  where "Big Pappa" told the undercover FBI Agent that his name was "JC", that he lived near

9  Lindsay and University in Arizona and that he is an electrician.   I am familiar that the address

10  3755 East Broadway Road has the major cross-streets nearby of Lindsay Road and University

11  Drive, Mesa, Arizona.

12  31. Surveillance was conducted on July 23, 2021, at 3755 East Broadway Rd, Apt 90, Mesa,

13  Arizona 85206. CHRISTEN's work truck, the 2019 F250 bearing Arizona license plate G956JH,

14  was parked out front of the residence.

15  32. On July 26, 2021, I conducted a wireless scan of the immediate area in front of the residence,

16  3755 East Broadway Road, Mesa, Arizona, 85206. I observed 22 secured wireless access points

17  in front of the residence.

18  33. Also during the wireless scan, I observed a white Ford F250 bearing Arizona license plate

19  G956JH and a grey Nissan Versa bearing Arizona license plate CAX5107 were parked in front

20  of the residence. A black and tan Ford F150 bearing Arizona license plate BNZ6355 was parked

21  in the driveway of the residence.

22  **FORFEITURE**

23  34. For Chapter 110 child pornography offenses, 18 U.S.C. §§ 2253 and 2254 provide the

24  forfeiture authority. Section 2254 provides for civil forfeiture of the same property subject to

25  criminal forfeiture in Section 2253, as requested in a criminal seizure warrant pursuant to 21

26  U.S.C. § 853(f).

27  35. Section 2253 provides, in relevant part:

28          (a) Property subject to criminal forfeiture -

1    (1) any visual depiction described in section 2251, 2251A, or 2252, 2252A, 2252B,

2    or 2260 of this chapter, or any book, magazine, periodical, film, videotape, or other

3    matter which contains any such visual depiction, which was produced, transported,

4    mailed, shipped or received in violation of this chapter;

5    (2) any property, real or personal, constituting or traceable to gross profits or other

6    proceeds obtained from such offense, and;

7    (3) any property, real or personal, used or intended to be used to commit or to

8    promote the commission of such offense or any property traceable to such property.

9    36. Pursuant to these Rules, I request immediate forfeiture of any property, including items of

10   electronic evidence, which constitutes, contains, or was used to facilitate a crime involving child

11   pornography or online child exploitation.

12   **CONCLUSION**

13   37. Based on the foregoing, there is probable cause to believe that Jon Evan Christen or another

14   person located at the SUBJECT PREMISES, is utilizing or has utilized the Kik username

15   "hi696987" in violation of Title 18 U.S.C. § 2252, which, among other things, makes it a federal

16   crime for any person to produce, possess, receive, or distribute child pornography, and that the

17   property, evidence, fruits and instrumentalities of these offenses, more fully described in

18   Attachment B of this Affidavit, are located at the SUBJECT PREMISES, as more fully described

19   in Attachment A.

20   Respectfully submitted,

21

22   *Emily G Steele*

23   Emily A. Steele, Special Agent
     Federal Bureau of Investigation

24   Subscribed and sworn to before me telephonically on this ___28___ day of July 2021.

25

26   *E S Willett*

27   HONORABLE EILEEN S. WILLETT
     United States Magistrate Judge

28